# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cause Number: 2:10-CR-24 JVB |
| v. ) | |
| ) | |
| NATHANIEL BAXTER ) | |

## OPINION AND ORDER

Defendant Nathaniel Baxter was charged in a one-count Indictment with knowingly and intentionally possessing 5 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant believes that the charge resulted from an unlawful arrest and an involuntary confession. Accordingly, he moved to suppress the crack cocaine recovered during his arrest and his statements made during the interview. Finding no constitutional violations, the Court denies the motion.

**A. Facts**

On November 10, 2010, the Court held an evidentiary hearing on Defendant's motion to suppress. Having heard the testimony and assessed the credibility of the witnesses, and having reviewed the parties' post hearing briefs, the Court finds that the following events took place on February 12, 2010, as they pertain to this case:

On February 12, 2010, Indiana State Troopers, Officer Michalak and Officer Krueger, were patrolling the area around the 20th and Ohio streets in Gary, Indiana. Both officers have

significant experience in drug enforcement: Officer Michalak has been with GRIT[1] for thirteen years and Officer Krueger has been with GRIT for three years. During their patrol, the officers noticed a green Chevy circling the area for a couple of minutes apparently attempting to find someone. Eventually, the Chevy stopped for less than a minute next to a tan Lincoln, with drivers of both cars facing each other. The drivers reached their hands out of their cars and exchanged something. Both cars then immediately departed. On the basis of the location—the area is known to be a high crime area—and their longtime police and drug task experience, the officers believed that they had witnessed a drug deal.

The officers followed the Chevy and pulled it over to question the driver about what had just taken place. The passenger of the car, Ms. Barszcz, told them that she had just bought crack cocaine. She claimed that she had thrown the cocaine out the window when the officers initiated the stop. The driver of the Chevy, Mr. Guzman, told the officers that the driver of the tan Lincoln, whom he identified as "Nate," sold them $20 worth of crack. The officers asked Mr. Guzman to call Nate to find out his location, which he did.

As a result of their conversation with Mr. Guzman, the officers located the tan Lincoln in front of PJ's the Groove Barbershop. They parked their unmarked police car two spaces behind the Lincoln. They watched the car and the driver (whom they later identified as Nathaniel Baxter, the Defendant in this case) for about ten minutes, after which he went inside the barber shop where he remained for about thirty to forty-five minutes. While Defendant was in the car, no one else was with him.

---

[1] GRIT (The Gang Response Investigative Team) is an FBI-led, multi-jurisdictional task force for dismantling drug trafficking organizations in Gary.

Abraham Williams, Defendant's friend and barber, contradicted this account by testifying at the evidentiary hearing that, when Defendant parked in front of the barber shop, he (Mr. Williams) came out and got into Defendant's car. He claims he saw Defendant take an ecstacy pill. The Court, however, does not find Mr. Williams's testimony on this point credible. He appeared squirmy and uneasy, trying to give the impression that he remembered every detail of the event. Consequently, the Court credits the officers account that Defendant remained in the car by himself.

After leaving the barber shop, Defendant walked to the parking lot on the south side of the building. The officers repositioned themselves about thirty feet away from a blue car that had just pulled into the parking lot. They saw Defendant speak briefly with the driver of the blue car, remove a bag the size of his palm from his pocket that was filled with smaller packages and contained off-white, rock-like substance, and hand the bag over to the driver of the blue car. The driver of the blue car gave Defendant cash in return, which Defendant added to a roll of money. Defendant then got into his car and drove away.

At this point, the officers decided to arrest Defendant and directed a marked police car in the area to stop him. During the pat-down, the officers found a small bag that contained crack cocaine. Defendant was transported to the police station and taken to the interrogation room where he was shackled to the floor. When the officers stepped out of the room, they could see on a closed-circuit video monitor Defendant getting rid of something from his pocket, which turned out to be an additional quantity of crack cocaine.

Defendant was given Miranda warnings after which he confessed to his criminal conduct and gave other relevant information to the officers. Both officers found Defendant to be alert and

cooperative. Neither of them observed any signs of intoxication or impairment.

In his motion to suppress, Defendant insists that the officers' accounts are improbable. In fact, he suggests that the officers lied on the witness stand. The Court is not convinced. The minor inconsistencies in the officers' testimony are nothing more than the usual discrepancies characteristic of most sworn testimonies, even where a witness has nothing to hide.

**B. Arrest**

Defendant claims that Officers Michalak and Krueger arrested him without probable cause in violation of the Fourth Amendment to the United States Constitution, and that, as a result, the crack cocaine recovered during the arrest and later in the interrogation room, as well as his post Miranda statements, should be suppressed at trial. The Court disagrees.

The Fourth Amendment requires probable cause for a warrantless arrest. Probable cause is a fluid concept that is not susceptible to a precise definition. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996). Instead, probable cause is determined "from the particular contexts in which the standards are being assessed." *Id*. Probable cause requires more than mere suspicion but less than virtual certainty. *United States v. Covarrubias*, 65 F.3d 1362, 1368 (7th Cir. 1995). In determining whether a probable cause existed at the time of the warrantless arrest, the Court must ask if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [defendant] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

A court must look at the totality of the circumstances when assessing whether police

officers could have reasonably believed that a particular person committed, or was committing, a crime. *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996). Officers "are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). In fact, experience is highly significant because "officers assigned to 'specialized areas of enforcement become familiar with the methods of those engaged in particular types of criminal activity,' giving them an ability to detect unlawful activity where laymen might not." *Id*.

Defendant characterizes the officers' actions in arresting him as capricious and random, yet neither was the case. Both officers have significant experience in drug enforcement. During their patrol in a high crime area, Officers Michalak and Krueger saw two people—Guzman and Barszcz—driving in the vicinity as if looking for someone. Then they saw Guzman and Defendant park next to each other for less than a minute, reach through their drivers' windows, exchange something, and depart. Given the circumstances and the location, the officers reasonably became suspicious that they had just seen a drug deal. Once they pulled Guzman over, their suspicions were confirmed. Both Barszcz and Guzman confessed that they had just bought crack from the driver of the tan Lincoln whom they identified as Nate. At the request of the officers, Guzman called Nate to find out his location under the pretext that he may be coming later for more drugs. Having learned of Defendant's location, the officers found him parked in front of the barber shop.

However, the officers did not arrest him at this point. They parked two cars behind him and watched him. They remained there even when Defendant went inside the barber shop. Once he came out, the officers saw, from no more than 30 feet away, Defendant hand over to the

5

driver of the blue car a bag filled with smaller packages containing an off-white, rock-like substance that they believed to be crack cocaine in exchange for cash. They also saw Defendant place the cash into a large wad of money. This, combined with the earlier transaction and Guzman's and Barszcz's confessions, gave rise to probable cause that Defendant was dealing drugs. Accordingly, when Michalak and Krueger directed another officer to pull over and arrest Defendant, all preconditions for a warrantless arrest had been satisfied.

## C. Voluntariness of the Confession

"A confession is voluntary if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir.1997) (citations omitted). A defendant's personal characteristics cannot, on their own, make a confession involuntary. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connely*, 479 U.S. 157, 167 (1986). "[A] suspect's physical pain or drug use does not make a confession involuntary as a matter of law." *United States v. Walker*, 272 F.3d 407, 413 (7th Cir. 2001).

Defendant claims that his confession was involuntary because he was under the influence of the ecstacy drug. However, apart from his barber friend's testimony, which was directly contradicted by the officers' testimony, there is no evidence that Defendant ingested ecstacy shortly before his arrest. Most importantly, however, there is no evidence that Defendant was impaired in any way during the interview at the police station. Both officers testified that they

6

had no reason to believe that Defendant was under the influence of drugs. To the contrary, they testified that Defendant appeared to be lucid, perfectly cogent, and articulate. In fact, during the interview he was able to give officers the information about his customers, suppliers, and relevant phone numbers without difficulty. Under these circumstances, the Court finds Defendant's claim that his confession was involuntary is without merit.

**Conclusion**

The Court denies Defendant's Motion to Suppress (DE 10).

SO ORDERED on February 16, 2011.

S/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE
